## Case No. 15,981.

### UNITED STATES v. PACHECO.

[Hoff. Land Cas. 79.] [1]

District Court, N. D. California. Dec. Term, 1855.

#### MEXICAN LAND GRANT.

No objections to the confirmation of this claim.

Claim [by Saliro Pacheco] for [the Rancho Monte del Diablo] four leagues of land, in Contra Costa county, confirmed by the board, and appealed by the United States. [The grant was made March 30, 1844, by José Figueroa to S. Pacheco, and a patent was eventually issued.]

S. W. Inge, U. S. Atty.
B. W. Leigh, for appellee.

## Case No. 15,982.

### UNITED STATES v. PACHECO et al.

[Hoff. Land Cas. 150.] [1]

District Court, N. D. California. June Term, 1856.[2]

#### MEXICAN LAND GRANT—CONSTRUCTION.

[When the land was granted by specific boundaries, which were represented to the grantor to contain a certain quantity, and, on ascertaining that the quantity was the same as that represented, he proceeded to grant all the land within those boundaries, and referred to the map, which clearly indicated the quantity, it will be assumed that the intention was to grant all the land included in the boundaries,

1 [Reported by Numa Hubert, Esq., and here reprinted by permission.]
2 [Reversed in 22 How. (63 U. S.) 225.]

though in a subsequent condition in the grant the quantity was erroneously stated.]

Claim [by Rosa Pacheco and others, devisees of Juana Sanchez de Pacheco] for [the Rancho Arroyo de las Nueces y Bolbones] two leagues of land, more or less, in Contra Costa county, confirmed by the board for two leagues, and appealed by the United States and by claimants.

William Blanding, U. S. Atty.
A. P. Crittenden, for claimants.

HOFFMAN, District Judge. In this case appeals have been taken both by the United States and by the claimants. The board confirmed the title to the land to the extent of two leagues; and the claimants assert that they are entitled to a confirmation of the tract granted by metes and bounds, and irrespective of quantity. With regard to the validity of the grant no question seems to be raised. In the brief filed on the part of the United States it is observed, that "on the general question of the validity of the whole grant, it is not designed to repeat objections and arguments which this court has so often decided to be untenable." The validity of the title being thus admitted, under the principles laid down in the former adjudications of this court, the only question is as to the extent to which it should be confirmed. The petition was presented to Governor Figueroa on the fifteenth of May, 1834, and the usual order of reference for information was made. After receiving the report of the ayuntamiento of San José Guadalupe, a further reference was made to the alcalde of Monterey, directing him to examine witnesses, to be produced by the petitioner, as to her qualifications, as to whether the land was vacant, as to its extent and nature, and as to whether she had the means of stocking it with cattle. The alcalde accordingly took the depositions of the witnesses, by which it appeared that, as stated by two of them, the land was two and one-half leagues, "a little more or less," long, and about two leagues broad; and as deposed by the third, that it was two leagues long, more or less, and about two leagues broad. Upon receiving these reports, the governor made the usual order of concession, declaring the petitioner "owner of the land between the Arroyo de las Nueces and the Sierra de los Golgones, bounded by the said places and by the ranchos of San Ramon, Las Juntas and Monte del Diablo; and directing the expediente to be sent to the most excellent deputation for their due approval. The grant or final title, in what would seem to be strict compliance with the colonization laws, was withheld until the approval of the assembly had made the grant definitively valid. On the eleventh of July, 1834, the assembly passed a resolution approving "the grant made to Doña Juana Sanches de

Pacheco of the place included between the Arroyo de las Nueces and the Bolbones." On the thirty-first of July, the governor, after referring to the resolution of approval, ordered the title to issue. It accordingly issued on the same day. The grant, after reciting that Doña J. S. de Pacheco had petitioned for the land included between the Arroyo de las Nueces and the Sierra de los Golgones. bounded by the said places and the ranchos of Las Juntas, San Ramon and Monte del Diablo, and after referring to the resolution approving the grant of the land between the Arroyo de las Nueces and the Sierra de los Golgones, grants to her "the aforesaid land, declaring to her the ownership of it by these presents, and subject to the following conditions." The fourth condition is as follows: "The land of which mention is made is two square leagues, a little more or less, as shown by the map which goes with the expediente. The magistrate who may give the possession will cause it to be measured in conformity with the ordinance, for the purpose of marking out the boundaries, leaving the surplus which may result to the nation for its convenient uses."

It is contended on the part of the United States that by this condition the quantity of land is limited to two leagues, a little more or less. It is urged on the part of the claimants, that the original order of concession, the resolution of approval, and the description of the land in the grant itself, clearly show the intention to have been to' grant the land as delineated on the diseño and described in the grant; and that if the fourth condition be construed to limit the quantity, it is repugnant to the rest of the grant, inconsistent with the previous concession and resolution of approval, and probably introduced by mistake.

If such was the intention of the governor when he made the concession, and of the assembly when they approved of it. the final title, issued with an express reference to, and avowed conformity with the resolution of approval, should, if possible, be so construed as to give effect to it. The inquiry therefore is. did the governor intend by the fourth condition to limit the quantity of land granted, or is the mention of quantity to be treated as merely a misdescription of the extent of the land. which should, as at common law, yield to boundaries, when the latter are distinctly mentioned, and when such construction is necessary to give effect to the intention of the parties? In the case of U. S. v. Wright [Case No. 16,769], it was held by this court, that where land had been granted by specific boundaries, which included in fact about eight leagues, and the condition specified the extent as four leagues, a little more or less. the grant could not to be construed to embrace the larger quantity. But in that case it appeared that the petitioner himself, as well as the witnesses produced by him, had represented the land as only "three or four leagues in extent." The governor, therefore, in limiting the grant to the quantity represented to be included within the boundaries, either merely carried into effect the understanding and intentions of all parties, or else the representations were fraudulent, and the parties to the deception could not in a court of equity be allowed the fruits of their fraud. It seemed to the court in that case that justice would be satisfied and every substantial right protected by limiting the extent of the land to the quantity which the governor intended to grant and the petition asked for. But the case at bar is different. The governor was fully apprised of the extent of the land, not only by the testimony of the witnesses produced before the alcalde, but the diseño which was submitted both to the governor and the assembly, and which is referred to in the condition, shows the land included within the boundaries to be of about the extent mentioned by the witnesses. The boundaries mentioned in the concession, the resolution of approval, and the grant, are the same as those indicated on the map, and the governor in all probability derived his description of the land from that source. It is clear from this fact, as well as the express language of the condition, that the governor intended to grant the land "as shown by the map;" and that map contains a scale which must, independently of other information, have apprised the governor that the quantity was greater than two leagues.

In this, as in all analogous cases, the only object of the court should be to carry out the intentions of the granting power. When, therefore, we find the land granted by specific boundaries, and those boundaries represented to the grantor to contain a certain quantity; when the grantor's attention has been directed to the point; and on ascertaining that the quantity is the same as that represented he nevertheless proceeds to grant all the land within those boundaries, and refers to the map which clearly indicates the quantity—under all these circumstances, we must consider that the intention was to grant all the land included within the boundaries, notwithstanding that in a subsequent condition the quantity may be erroneously stated. That conditions applicable only to one species of grants were often inserted by mistake in grants of a different species is notorious. In this case the mention of two leagues as the extent of the granted land is perhaps owing to the fact that the clerk who drafted the document forgot that a tract two leagues broad by two wide contained four and not two square leagues. However this may be, we think it clear that in this case all the land within the boundaries was intended to be granted; and as there is no proof or suggestion that the land so included exceeds in

extent the quantity testified to by the witnesses before the alcalde. that the claim should be confined to the tract as described in the grant and delineated on the map.

[The case was taken by appeal to the supreme court. where the decree was reversed, and the cause remanded to the district court for further proceedings. 22 How. (63 U. S.) 225.]